1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BOBBY D. JOHN,                          No.  2:17-cv-1963 JAM GGH

12                 Petitioner,

13         v.                                FINDINGS AND RECOMMENDATIONS

14   PEOPLE OF THE STATE OF
     CALIFORNIA,
15
                   Respondent.[1]
16

17

18   *Introduction and Summary*

19         Somewhat logically, see People v. Taylor, 93 Cal. App. 4th 933 (2001) (that a person

20   must know he is in possession of a cane sword is an element of the crime of possession of a cane

21   sword), petitioner asserts that he cannot be convicted of grand theft of a firearm when he did not

22   know that the safe he stole contained a firearm.  However, state law prevails here, and petitioner's

23   two related issues of insufficient evidence and erroneous jury instruction as violation of due

24   process (placing the burden of proof on petitioner) should be denied.

25   *////*

26

27   [1]  Respondent does not object to the naming of "The People" as a defect which deprives this court
     of personal jurisdiction.  See Stanley v. Cal. Supreme Court, 23 F.3d 359 (9th Cir. 1994).  The
28   undersigned considers the matter waived.

                                            1

*Federal Case Proceedings*

Petitioner filed his petition for writ of habeas corpus pro se on September 21, 2017, ECF

No. 1, and a motion to proceed with the petition in forma pauperis on the same day.  ECF No. 2.

In forma pauperis status was granted by the court on October 12, 2017.  ECF No. 7.

Respondent filed an Answer to the petition on December 28, 2017.  ECF No. 13.  Based on the

court's service order, petitioner was directed to file any traverse to such an answer within thirty

(30) days of its filing.  ECF No. 7 at 2:5-6.  No traverse has been filed, and the time for doing so

is long past.  Thus, the court will address the merits of the petition based upon the filings of the

parties as they are found in the record.

Petitioner does not object to any of the convictions he received save for grand theft of a

firearm.  The undersigned will only discuss the firearm issue.

*Factual Background*

The underlying facts in this case are best explained by the Third District Court of

Appeal's review of petitioner's appeal.  Lodged Document ["Lod. Doc."] No 1.

> A jury found defendant Bobby D. John guilty of grand theft of a firearm
> after he stole a closed safe that contained a handgun.  On appeal, defendant argues
> that theft includes a knowledge requirement that was not proven here and on which
> the trial court failed to instruct the jury.  Because we conclude that the offense of
> theft by larceny requires simply that the defendant intended to steal the property of
> another and does not require that the defendant know what is being stolen, we find
> no merit in defendant's argument.  For that reason, we affirm.
> 
> ***
> 
> In the summer of 2011, Lucy May Souza was at her home with her
> husband, Arthur.  Lucy was 80 and Arthur was 90, afflicted with dementia and
> bedridden.  On day, at approximately 12:45 p.m, a man wearing a hard hat came to
> the Souza's front door.  The man told Lucy he was from FEMA and wanted to
> check the back of her house for seepage from the nearby river.  He convinced
> Lucy to go to her backyard with him.  The man spent approximately 10 to 15
> minutes making a show of inspecting the yard, calling his "supervisor" and
> moving Lucy around the yard – away from her home – to mark plants she liked
> with flags and to look at different parts of the ground.  After another telephone
> call, the man abruptly turned and ran away.  Lucy did not see him again that day.

Lucy entered her home to check on her husband and saw that a chest of hers had been opened. Knowing that she normally kept this chest closed, Lucy went to inspect and noticed that the chest's contents had been disturbed. She then went to check on her two safes, where she kept her "important papers and valuables locked up." Both were gone. Apart from important documents and nice jewelry, Lucy and Arthur kept a gun in one of the safes. All told, approximately $33,000 in property was taken from the Souzas' home.

Shortly thereafter, Lucy noticed an article in the Sacramento Bee that recounted a burglary very similar to the one she experienced, and she thought the suspect pictured, defendant, looked similar to the man who stole her safes. After receiving a call from Lucy's grandson, Michael Souza, Sacramento County Sheriff's Department Detective Todd Gooler came to Lucy's house and showed her photographs of six different men. Defendant's photograph was included. After Detective Gooler instructed Lucy on photographic lineups, she identified defendant as the man who claimed to be from FEMA.

Defendant was charged with first degree residential burglary from a separate incident. Following an examination hearing, that complaint was consolidated with the complaint concerning the burglary of the Souzas' home, and an information was filed. The charges arising from the incident here included first degree residential burglary; commission of "theft, embezzlement, forgery, fraud and identity theft, with respect to the property of an elder and dependent adult"; and grand theft of a firearm.

At trial, the court instructed the jury that, in order to find defendant guilty of grand theft of a firearm, "the People must prove that: [¶] 1. The defendant took possession of a firearm owned by someone else; [¶] 2. The defendant took the firearm without the owner's consent; [¶] 3. When the defendant took the firearm he intended to deprive the owner of it permanently; [¶] [and] [¶] 4. The defendant moved the firearm, even a small distance, and kept it for any period of time, however brief." While deliberating, the jury sent the court a question asking if it would matter "whether . . defendant had knowledge or did not have knowledge that a weapon was in the safe at the time it was stolen?" The court replied that "[k]knowledge of the contents of the safe at the time it was taken is not an element of [grant theft of a firearm]." The jury found defendant guilty of all counts. The court sentenced defendant to an aggregate term of nine years and eight months.

\*\*\*

The statute under which defendant was convicted defines grand theft, in pertinent part, as "theft committed [¶] . . . [¶] [w]hen the property taken is [a] firearm." (Pen. Code, § 484, subd. (d)(2).) In turn, theft is defined as applying to

one "who shall feloniously take, carry, lead, or drive away the personal property of another . . . ." (Pen. Code § 484, subd. (a).) Defendant contends that because Penal Code section 484, subdivision (a) does not specifically include a mens rea element, this court should construe the statute to require that defendant knew, at the time of the theft, that he was taking a gun. We disagree. The substantive requirements of theft by larceny are well established. (*People v. Davis* (1998) 19 Cal.4th 301, 305.) "[Theft by larceny] is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) *with intent to steal the property,* and (6) carries the property away." (*Id.* at p. 305, italics added.) "The intent to steal is the intent . . . to permanently deprive the owner of possession." (*Ibid.*) Theft by larceny requires only that defendant intended to steal the property of another; there is no requirement that he knew what he was stealing.

In support of his argument, defendant points to *People v. Taylor* (2001) 93 Cal.App.4th 933. In that case, we considered a statute prohibiting possession of a cane sword that did not explicitly include a mens rea element. (*Id.* at pp. 937-938.) We looked to whether possession of a cane sword could be considered a public welfare offense for which no scienter is required and concluded that because of the "obscure nature of its unlawful characteristic . . . , we infer the Legislature intended a scienter requirement of actual knowledge that the cane conceals a sword." (*Id.* at p 941.) Defendant contrasts *Taylor* with *In re Jorge M.* (2000) 23 Cal.4th 866, in which out Supreme Court held that a statute prohibiting possession of an unregistered assault weapon did not require actual knowledge (*id.* at pp 869-870) because "a person who knowingly possesses a semiautomatic firearm reasonably should have investigated and determined the gun's characteristics" (*id.* at p. 885). Defendant argues that because the locked safe here "involved an inherent obscurity . . . like the blade in the . . . cane sword" and because [g]rant theft of a firearm is a serious felony offense," we should apply the logic of *Taylor* and *Jorge M.* to hold that to be convicted of grand theft of a firearm, defendant must have had actual knowledge that he was stealing a gun.

In *People v. Campbell* (1976) 63 Cal.App.3d 599, we addressed a situation very similar to the one here. In *Campbell*, the defendant was found guilty of, among other things, grand theft of a firearm. (*Id.* at p. 603.) A woman left her purse in her car and the defendant stole the purse. (*Id.* at pp. 606-607.) The purse contained a semiautomatic pistol. (*Id.* at p. 606.) The defendant appealed his conviction, arguing that "theft requires the specific intent to steal . . . [and s]ince there is no evidence that [the] defendant had specific intent to steal the firearm . . ., the conviction for grand theft cannot stand." (*Id.* at p. 615.) We disagreed. "The evidence admits of no doubt that defendant intended to steal *the purse*. In doing

4

so, we are of the view that he intended to steal *the contents* of the purse. In this case the gun . . . . We conclude that the defendant was properly convicted of grand theft of the gun." (*Ibid.*) Just as in *Campbell*, the facts here clearly support the jury's finding, pursuant to the trial court's proper instructions, that defendant "took possession of a firearm owned by someone else; [¶] . . . without the owner's consent; [¶] [with intent] to deprive the owner of it permanently; [¶] [and] [¶] moved it . . . ." That defendant did not have knowledge that he was stealing a gun is immaterial. There is no risk here, as there was in *Jorge M.* and *Taylor,* "of punishing innocent possession" (*People v. Taylor, supra*, 93 Cal.app.4th at p. 941) and, as such, there is no need to imply an additional mens rea element of intent to steal. The jury found that defendant intended to permanently deprive the Souzas of their gun. This satisfies the mental state requirement of the offense of theft.

*Discussion*

As set forth in the introduction, petitioner believes that he cannot be convicted of grand theft with respect to a firearm unless he knew he was stealing a firearm. He asserts that to hold otherwise establishes the lack of sufficient evidence to convict him, and, in addition or in the alterative, he posits that not informing the jury of this specific intent "requirement" violates his due process right. See e.g. Ho v. Carey, 332 F.3d 587 (9th Cir. 2003).

However, as held in his own Court of Appeal case (citing state law authority), there is no specific intent requirement under state theft law to the effect that one must know he is stealing the specific item of a firearm. In addressing the question of the requisite intent required for defendant's conviction for stealing a firearm housed in a safe where he could not be aware it was housed at the time of the taking, the Third District Court of Appeal stated "the facts here clearly support the jury's finding, pursuant to the trial court's proper instructions, that defendant "took possession of a firearm owned by someone else; [¶] . . . without the owner's consent; [¶] [with intent] to deprive the owner of it permanently; [¶] [and] [¶] moved it . . . . That defendant did not have knowledge that he was stealing a gun is immaterial." Thus the appellate court found the statute in question to require only the intent to complete the act of theft without regard to whether the thief specifically desired the specific thing stolen.

As the Supreme Court held in a per curium opinion that reversed a decision of the Sixth Circuit of Appeals, a state court's determination of the scope of its criminal statute, even if

5

1  "announced on direct appeal of the challenged conviction" for the first time "binds a federal court

2  sitting in habeas corpus. Bradshaw v. Richey, 546 U.S. 74, 76 (2005), *citing* Estelle v. McGuire,

3  502 U.S. 6, 67-68 (1991); Mulaney v. Wilbur, 421 U.S. 684, 691 (1975). In Bradshaw the

4  defendant was convicted of aggravated murder when a child was killed in a fire he set explicitly

5  to kill his ex-girlfriend and her boyfriend on a theory of "transferred intent." 546 U.S. at 74.

6  The Sixth Circuit had held that to apply this theory would result in an unconstitutional conviction

7  as it believed state law at the time of the act was contrary to what the Ohio Supreme Court had

8  held it was. This case relies on the argument adopted by the Circuit Court, but overruled by the

9  Supreme Court. The Ninth Circuit Court of Appeals has applied this rule on numerous occasions,

10  see e.g., Medley v. Runnels, 506 F.3d 857-865 (9th Cir. 2007)(the elements of a state crime are

11  determined by state law); Jeffries v. Blodgett, 5 F.3d 1180, 1194 (9th Cir. 1993)(the state bears the

12  sole responsibility of defining the elements of its criminal offenses); Mendez v. Small, 298 F.3d

13  1154, 1158 (9th Cir. 2002)(the state courts have the last word on the interpretation of state law).

14  Thus, no matter how petitioner posits his issue, an asserted lack of evidence to show that

15  he knew he was stealing a firearm, or a violation of due process in jury instructions because the

16  prosecution was relieved of proving an element of the crime, his theory flounders upon state law

17  to the contrary. That is what distinguishes this case from Ho v. Carey; in Ho it was undisputed in

18  the appellate opinion that the jury instruction at issue was contrary to state law.

19  *Conclusion*

20  In light of the foregoing IT IS HEREBY RECOMMENDED that:

21  1. Petitioner's petition for a writ of habeas corpus should be denied;

22  2. No Certificate of Appealability should issue;

23  3. The Clerk of the Court should close this case.

24  These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days

26  after being served with these findings and recommendations, petitioner may file written

27  objections with the court and serve a copy on all parties. Id.; see also Eastern District of

28  California Local Rule 304(b). Such a document should be captioned "Objections to Magistrate

1  Judge's Findings and Recommendations."  Any response to the objections shall be filed with the

2  court and served on all parties within ten (10) days after service of the objections.  Id. Rule

3  304(d).  Failure to file objections within the specified time may waive the right to appeal the

4  District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951

5  F.2d 1153, 1156-57 (9th Cir. 1991).

6  Dated: November 19, 2018

7                                  /s/ Gregory G. Hollows
                          UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28